IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH J. LYNCH, JOSEPH B. LYNCH | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO. 25-3442 |
| | : | |
| HAVERFORD TOWNSHIP, CHIEF JOHN VIOLA, LIEUTENANT LAWRENCE TODD, SERGEANT ROBERT MCCREIGHT, CODE DIRECTOR JOSEPH CELIA, TOWNSHIP MANAGER DAVID BURMAN, DELAWARE COUNTY DISTRICT ATTORNEY'S OFFICE, DELAWARE COUNTY MOBILE CRISIS FOR LAW ENFORCEMENT (MCLE), JOHN DOES 1-2 | : : : : : : : : : : : | |

## MEMORANDUM

KEARNEY, J.                                                    October 20, 2025

A Haverford Township man did not like how his local police protected his neighborhood and how the township paid its police chief in Spring 2023. He complained on May 12, 2023 to the Delaware County District Attorney's Office. A township mental health crisis response team and other township personnel including police officers visited the home he shares with his parent homeowners including within hours of his May 12, 2023 complaints to a detective in the County's District Attorney's Office. The township officials returned a few times over the next few weeks. Township officials took pictures of alleged code violations at the property. The officials then cited his property owner father for violating the township code by storing landscaping materials. A judge found the property owner father did not violate the township code after two hearings, including a hearing where the judge and police removed the property owner's son from the courtroom. The father and son waited almost two years and then pro se sued the township, township police

officials, Delaware County District Attorney's office, township officials, and unidentified mental health professionals claiming they violated their constitutional rights and under several Pennsylvania law theories.

The township and state actors moved to dismiss. The father and son chose to not timely contest the dismissal arguments. We nevertheless studied the allegations. We dismiss the federal claims with differing treatment moving forward. We dismiss some claims with prejudice (and no leave to amend) including those facially time barred by Pennsylvania's two-year statute of limitations. We dismiss other timely federal claims as uncontested without prejudice for the father and son to timely plead a First Amendment retaliation claim against each individual state actor. We decline to today exercise supplemental jurisdiction over the state law claims absent a federal question without prejudice to the father and son timely seeking remedies in state court for these state law claims.

## I.  Alleged pro se facts.

Joseph J. Lynch did not like how his hometown Haverford Township protected his community and paid its police chief in May 2023.[1] Joseph J. Lynch, living with his father property owner Joseph B. Lynch, reported suspected municipal corruption to the Criminal Investigative Department of the Delaware County District Attorney's Office on May 12, 2023.[2]

### *Police and mental health professionals visit the Lynch home on May 12, 2023.*

Haverford police officers along with mental health professionals visited the Lynches' home on May 12, 2023 following Son Lynch's report to the Delaware County District Attorney's Office.[3] Son Lynch attempted to identify the people visiting the Lynch home on May 12, 2023 but an unidentified person at the District Attorney's Office would not provide the names and told Son

Lynch his complaints would be "thrown in the trash" and he would be "labeled" as mentally ill if he pursued the matter.[4]

### Mental health professionals and the Code Director visit the Lynches' property in June 2023.

Mental health professionals then visited the Lynch home in June and July 2023.[5] Father Lynch objected to the visits on June 12, 2023.[6] Son Lynch followed the mental health professionals down the street and told them future visits would be grounds for charges against them.[7]

Township Code Director Joseph Celia visited the Lynch property on June 19 or 20, 2023 and accused Son Lynch of illegally building an access trail and an illegal retaining wall on the trail.[8] Son Lynch countered his conduct is entirely legal and a state–protected activity.[9] Code Director Celia accused Son Lynch of illegally having materials delivered onto a grass strip outside the Lynch home.[10] Son Lynch responded his conduct is legal.[11] Son Lynch asked Code Director Celia to stop harassing him and accused the Haverford Police Department of retaliation for his May 12 corruption report by sending Code Director Celia to the property. [12] Code Director Celia refused to leave and asked to enter the home to inspect the property.[13] Son Lynch denied Code Director Celia access telling him he needed a warrant and should never return to the property without a legal basis and to stop harassing his family.[14] Code Director Celia entered the side of the property.[15] Son Lynch directed Code Director Celia to leave the property.[16] Code Director Celia began photographing the property.[17] Code Director Celia then used these photographs to issue a code violation on June 20, 2023.[18] The June 20,. 2023 violation identified Father Lynch and his wife as the owners of the property.[19]

Township Police Lieutenant Lawrence Todd photographed the Lynch property on June 27, 2023.[20] Lieutenant Todd sent these photographs to Code Director Celia who later visited the Lynch property the same day.[21] Son Lynch again directed Code Director Celia to get off his parents'

property.[22] Code Director Celia asked Son Lynch to get his father.[23] Son Lynch directed Code Director Celia to leave.[24] Father Lynch then came outside.[25] Code Director Celia said he did not care about the family's project and complimented them on the property.[26] Code Director Celia nevertheless issued a code violation.[27]

### Visits to Father Lynch's property in July 2023.

Township Police Sergeant Robert McCreight knocked on the front door of the Lynches' property on July 2, 2023 to address outstanding code violations and directed Father Lynch to "move the materials."[28] Father Lynch told Sergeant McCreight he would be go to court to resolve these concerns.[29] Township Manager David Burman visited the Lynches property the next day and then drafted a code violation threatening ninety days' jail time for landscaping issues.[30] Code Director Celia returned two days later.[31] Son Lynch again told Code Director Celia to leave the property but Code Director Celia stayed and looked for Father Lynch.[32] Code Director Celia told Father Lynch everything was fine with the project and Township Manager Burman forced him to come onto the property and look at the ongoing activity.[33] Code Director Celia nevertheless posted a code violation on the front door of the property.[34]

### Father Lynch defeats the code violations in court after police remove Son Lynch.

The Township proceeded to a hearing on the code violation on August 23, 2023 before Judge Duerr.[35] Code Director Celia offered photographs to support the code violation.[36] Father Lynch told Judge Duerr the township retaliated because of Son Lynch's May 12, 2023 corruption report.[37] Code Director Celia admitted the police sent him to the Lynches' property.[38]

The parties proceeded to a second day of hearings over two months later on October 31, 2023 before Judge Duerr.[39] Code Director Celia presented the photographs as evidence shown at the earlier hearing.[40] Son Lynch, claiming to be authorized on behalf of his father, swore the code

violations are evidence of retaliation for his May 12, 2023 report of corruption to the Delaware County District Attorney's Office.[41] Son Lynch argued his landscaping activities are state–protected activities.[42] Son Lynch swore Code Director Celia and Lieutenant Todd illegally obtained the evidence.[43] Judge Duerr found the Lynches not guilty of the code violations.[44]

Judge Duerr became concerned with the conduct of Son Lynch at some unpleaded point during this hearing.[45] Judge Duerr found Son Lynch to be talking too fast.[46] Judge Duerr asked Father Lynch to ask Son Lynch to leave the courtroom.[47] Son Lynch apparently did not do so.[48] Township Police Officer Fuller removed Son Lynch from the courtroom by grabbing his right forearm and punched Son Lynch in the back within ten feet of Judge Duerr.[49] Son Lynch then left the courtroom.[50]

### Son Lynch reports Judge Duerr to the judicial conduct board.

About a year later in an unrelated matter Judge Duerr described her behavior at the October 31, 2023 hearing to Son Lynch as "witness tampering," "producing a false statement," and "being pressured by Haverford Police."[51] Son Lynch reported Judge Duerr's admissions to the Pennsylvania Judicial Conduct Board.[52]

## II.  Analysis

Father and Son Lynch sued Haverford Township, Police Chief John Viola, Lieutenant Lawrence Todd, Sergeant Robert McCreight, Code Director Joseph Celia, Township Manager David Burman, the Delaware County District Attorney's Office, Delaware County Mobile Crisis for Law Enforcement and two unidentified mental health professionals on July 2, 2025 alleging civil rights violations and under Pennsylvania law.[53] Father and Son Lynch have not yet served their Complaint upon the District Attorney's Office or the Mobile Crisis Unit. They also claim to

have served someone as "John Doe" but do not identify them and we have no basis to find proper service requiring we today strike their proof of service upon unidentified persons.[54]

Father and Son Lynch allege First Amendment retaliation based on Son Lynch's protected speech on May 12, 2023 through issuing code violations, threatening him with false arrest, obstructing a criminal complaint, and presenting illegally obtained evidence at the hearings before Judge Duerr where they defeated the charges with no sanction.[55] The Lynches claim Code Director Celia, Lieutenant Todd, and unidentified mental health professionals unlawfully entered Father Lynch's property on May 12, June 19-20, June 27, and July 5, 2023 without probable cause or consent and Sergeant McCreight seized landscaping material on July 2, 2023 in violation of the Fourth Amendment.[56] They claim Township Manager Burman, Code Director Celia, and Lieutenant Todd violated their procedural due process rights by issuing code violations and presenting false evidence without fair notice and opportunity to respond even though the Lynches attended and defeated the code violations.[57] They further allege Township Manager Burman, Chief Viola, Code Director Celia, Lieutenant Todd, and Sergeant McCreight conspired to deprive them of their First, Fourth and Fourteenth Amendment rights motivated by animus against Son Lynch as a whistleblower.[58] They further seek to impose municipal liability upon Haverford Township without pleading a policy or custom by the Township.[59] The Lynches also bring claims under Pennsylvania law for trespass, malicious prosecution, defamation and intentional infliction of emotional distress.[60]

Son Lynch claims he is incurring $1,000 per week of medical bills for therapy, $150,000 in reputational harm due to property development loan denials, and $750,000 in lost contracts for property developments.[61] He seeks damages of almost $2 million.[62] Father Lynch alleges severe emotional distress causing him to lose fifteen pounds and losing $150,000 per year in wages.[63]

Father Lynch estimates damages of $2,335,000 based on ongoing health issues, loss of enjoyment of his property, and reduced work capacity.[64]

Haverford Township, Police Chief Viola, Lieutenant Todd, Sergeant McCreight, Code Director Celia, and Township Manager Burman move to dismiss arguing: (1) Father Lynch has not stated a claim; (2) the official capacity claims against the individual defendants are duplicative of the claims against Haverford Township; (3) the First Amendment retaliation claim is time-barred and otherwise insufficiently pleaded; (4) the Fourth Amendment claim fails to allege an unlawful search or seizure; (5) the Fourteenth Amendment due process claim is partially time-barred and otherwise fails to allege a cognizable deprivation or inadequate process; (6) the civil rights conspiracy claim does not apply to the facts as alleged; (7) the Complaint does not plead facts sufficient to state a claim for municipal liability; and (8) the state law claims are barred in part by the statute of limitations.[65] Police Chief John Viola, Lieutenant Lawrence Todd, Sergeant Robert McCreight, Code Director Joseph Celia, and Township Manager David Burman further contend they are entitled to qualified immunity.[66]

We are directed by our Court of Appeals to be "mindful of our obligation to liberally construe a pro se litigant's pleadings . . . ."[67] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[68] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[69]

But we also require pro se parties to participate in their cases. Our Court through Local Rule 7.1(c) provides "[w]hen a party has failed to timely respond to a motion to dismiss within 14 days, the Court is authorized to grant the motion as uncontested."[70] Haverford Township, Police Chief John Viola, Lieutenant Lawrence Todd, Sergeant Robert McCreight, Code Director Joseph

Celia, and Township Manager David Burman moved to dismiss on September 15, 2025.[71] Father and Son Lynch chose not to respond.

We grant Haverford Township, Police Chief John Viola, Lieutenant Lawrence Todd, Sergeant Robert McCreight, Code Director Joseph Celia, and Township Manager David Burman's Motion as uncontested. We dismiss the Lynches' official capacity, Fourth Amendment, and Fourteenth Amendment claims with prejudice as they cannot state a claim as matter of law. We dismiss the Lynches' First Amendment retaliation claim in part with prejudice and in part without prejudice. We dismiss the Lynches' civil rights conspiracy, municipal liability, and state law claims without prejudice to timely amend or we will close the case.

### A. We dismiss official capacity claims against individual state actors with prejudice.

Father and Son Lynch bring claims against Chief Viola, Lieutenant Todd, Sergeant McCreight, Code Director Celia, and Township Manager Burman in both their individual and official capacities. Chief Viola, Lieutenant Todd, Sergeant McCreight, Code Director Celia, and Township Manager Burman argue the official capacity claims must be dismissed.[72]

Claims against county or municipal officials in their official capacity under section 1983 are treated as claims against the entity itself.[73] Official capacity claim against Code Director Celia and Township Manager Burman are claims against Haverford Township. These claims are duplicative.

The official capacity claims against Chief Viola, Lieutenant Todd, and Sergeant McCreight are likewise treated as claims against the Haverford Police Department. But the Haverford Police Department is a mere sub-unit of the municipality and may not itself be sued as a "person" acting under color of state law.[74]

We dismiss all official capacity claims against the individual state actors with prejudice. To sue a municipal employee in his individual capacity, the Lynches must plead the existence of personal involvement.[75] "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."[76] In this context, our Court of Appeals has held "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."[77]

**B.   We dismiss the unreasonable search and seizure claims under the Fourth Amendment with prejudice.**

Father and Son Lynch claim Code Director Celia, Lieutenant Todd, and Sergeant McCreight violated their Fourth Amendment right against unreasonable search and seizure when they "conducted warrantless searches of 501 Mill Road or 505 Mill Road on May 12, June 19–20, June 27, and July 5, 2023, without probable cause or consent, and Defendant McCreight seized landscaping activities on July 2, 2023."[78] Code Director Celia, Lieutenant Todd, and Sergeant McCreight argue conduct alleged before July 2, 2023 is plainly barred by the statute of limitations and the Lynches fail to allege facts to support an actual search or seizure.[79] They argue the alleged presence on the Lynch property and reference to "seizing landscaping activities" do not establish a Fourth Amendment violation.[80]

Federal claims brought under section 1983 are governed by Pennsylvania's two-year statute of limitations for personal injury actions.[81] "[A] cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury."[82] We agree the alleged searches on May 12, June 19 and 20, and June 27, 2023 are time-barred by Pennsylvania's two-year statute of limitations. But the property visits after July 2, 2023 are not time-barred.

The Lynches allege an unconstitutional seizure occurred when Sergeant McCreight "knocked on the front door of 501 Mill Road" on July 2, 2023, Father Lynch answered, Sergeant McCreight "berated" him for "outstanding code violations" by stating "[m]ove the materials now," and Father Lynch replied it "is [his] property" and he "will be going to court to resolve this."[83] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[84] The "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[85] A Fourth Amendment seizure occurs "when there is some meaningful interference with an individual's possessory interests in [her or his] property.'"[86] Meaningful interference "includes the exercise of 'dominion and control' over or destruction of property."[87] But police may "'knock and talk' with people in a residence, and doing so is not a seizure under the Fourth Amendment.[88] "In order to effectuate a seizure, there must be something more than 'inoffensive contact between a member of the public and the police. . . . '"[89]

The Lynches do not allege any conduct beyond Sergeant McCreight's knock on the front door and the brief exchange between Sergeant McCreight and Father Lynch. They do not allege physical entry, restraint, or any exercise of dominion or control over the property. Sergeant McCreight's "brief presence on the [Lynches'] property and short conversation with [Father Lynch] did not approach the meaningful possessory interference contemplated by the Fourth Amendment."[90]

The Lynches also claim an unconstitutional search occurred when Code Director Celia "trespassed onto 501 Mill Road via the Earlington Road stairs" on July 5, 2023, "began walking around the property," "called for" Father Lynch, Father Lynch "came to the front yard," and Code Director Celia "walked to the front door of 501 Mill Road, and posted the violation on the front

door, including a threat of arrest."[91] A Fourth Amendment search occurs "either when the Government violates an individual's reasonable expectation of privacy or when the Government obtains information by physically intruding on persons, houses, papers, or effects."[92] "Trespass alone does not qualify [as a search], but there must [also] be . . . an attempt to find something or to obtain information."[93] "The Fourth Amendment prohibits only *unreasonable* searches [and t]he reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations."[94]

The Lynches have a reasonable expectation of privacy in the area immediately surrounding their home including their front door.[95] But they do not allege Code Director Celia entered or attempted to enter the house, or engaged in conduct beyond entering the property, calling for Father Lynch (the property owner), and posting the violation on the front door. They do not plausibly allege Code Director Celia attempted to obtain information or conduct a search within the meaning of the Fourth Amendment.[96] He appeared to post the violation notice and the interaction ended once the posting was complete.[97]

We dismiss the Lynches' Fourth Amendment claims with prejudice.

### C.  We dismiss Father and Son Lynch's Fourteenth Amendment due process claim with prejudice.

The Lynches claim Township Manager Burman, Code Director Celia, and Lieutenant Todd deprived them of procedural due process under the Fourteenth Amendment "by collaborating and issuing baseless code violations from June 19 to July 5, 2023," "presenting illegally obtained evidence at the August 23, 2023 hearing," and "undermining Plaintiffs' property rights without fair notice or opportunity to respond."[98] Township Manager Burman, Code Director Celia, and Lieutenant Todd again argue conduct before July 2, 2023 is barred by the statute of limitations.[99]

11

They also argue this claim fails because the Township issued alleged code violations to Father Lynch (not Son Lynch) and he received notice and a full opportunity to challenge the violations through the Township's established procedures.[100] We agree the alleged violations before July 2, 2025 are time-barred by Pennsylvania's two-year statute of limitations.[101]

To state a procedural due process claim under the Fourteenth Amendment, the Lynches must allege (1) a deprivation of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) the procedures made available to them did not provide due process.[102] "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard."[103]

The Lynches admit those protections existed. Father Lynch received formal notice of the alleged code violations, participated in two hearings, and Judge Duerr found him not guilty.[104] Those proceedings afforded him notice and a meaningful opportunity to be heard—the very process the Constitution requires. The Lynches identify no protected interest actually deprived and no procedural deficiency amounting to a constitutional violation. Their allegations cannot support a Fourteenth Amendment claim.

We dismiss the procedural due process claim with prejudice.

**D.    We dismiss with prejudice Son Lynch's First Amendment retaliation claim barred by the statute of limitations but grant leave to amend the claim based on conduct on or after July 2, 2023.**

Son Lynch asserts a First Amendment retaliation claim based on conduct both before and after July 2, 2023.[105] The Pennsylvania two-year statute of limitations applying to a civil rights claim requires we only consider claims for conduct within two years of filing this case on July 2, 2025.

Son Lynch alleges all "Defendants" retaliated against him for his "protected speech on May 12, 2023" by "dispatching [the Delaware County Mobile Crisis for Law Enforcement]," "threatening him with false arrest, issuing false code violations," "obstructing his criminal complaint," and "presenting illegally obtained evidence."[106] The alleged protected speech is Son Lynch's report of suspected municipal corruption to the Delaware County District Attorney's Office on May 12, 2023.[107] The alleged retaliatory dispatches of the County mental health crisis response unit occurred on May 12 and June 12, 2023.[108] The alleged threats of false arrest occurred on May 12 and July 5, 2023.[109] The alleged issuance of false code violations occurred on June 27 and July 5, 2023.[110] The alleged obstruction of Son Lynch's criminal complaint occurred between May 13 and June 12, 2023.[111] The alleged presentation of illegally obtained evidence occurred on August 23 and October 31, 2023.[112] Haverford Township, Police Chief John Viola, Lieutenant Lawrence Todd, Sergeant Robert McCreight, Code Director Joseph Celia, and Township Manager David Burman argue the First Amendment retaliation claim is time-barred and otherwise insufficiently pleaded because the Lynches do not identify the alleged protected speech with sufficient specificity.[113]

We agree with the state actors as to the untimely nature of several claims. But we grant Son Lynch leave to amend to properly plead First Amendment claims for alleged retaliation on or after July 2, 2023. He must now allege (1) he engaged in "constitutionally protected conduct"; (2) a state actor "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) a "causal link between the constitutionally protected conduct and retaliatory action."[114]

"In the First Amendment retaliation context, individual discrete acts 'g[ive] rise to a cause of action at the time [they] occur[ ].'"[115] The Lynches filed their Complaint on July 2, 2025.[116]

Any alleged retaliatory acts before July 2, 2023 are time-barred. Son Lynch's First Amendment retaliation claim to the extent it rests on all mental health crisis response unit dispatches, the May 12, 2023 threat of false arrest, the June 27, 2023 issuance of false code violations, and obstruction of his criminal complaint is untimely.[117] We dismiss these bases with prejudice.

The only timely claims for Son Lynch's First Amendment retaliation claim are based on the July 5, 2023 threat of false arrest and issuance of false code violations, and the presentation of illegally obtained evidence on August 23 and October 31, 2023. We dismiss these claims without prejudice to timely amend with a good faith pleading of the facts

### E.  Son Lynch does not plead a claim for conspiracy.

Son Lynch alleges a civil rights conspiracy under section 1985(3).[118] He alleges Chief Viola, Lieutenant Todd, Sergeant McCreight, Code Director Celia, and Township Manager Burman "conspired to deprive Father and Son Lynch of their First, Fourth, and Fourteenth Amendment rights, motivated by animus against [Son] Lynch as a whistleblower, a protected class under § 1985(3)."[119] Chief Viola, Lieutenant Todd, Sergeant McCreight, Code Director Celia, and Township Manager Burman argue section 1985(3) does not apply.[120]

A viable claim under section 1985(3) requires: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."[121] But a civil rights conspiracy claim cannot survive without an underlying federal constitutional violation.[122]

Son Lynch does not plead a standalone constitutional violation under federal civil rights law as shown in detail above. We dismiss his conspiracy claim under section 1985(3) without prejudice to timely amend if he can plead a constitutional claim.

### F.   Son Lynch does not plead a claim for municipal liability.

Son Lynch asserts a municipal liability claim under section 1983 against Haverford Township.[123] He alleges the Township "maintained a custom or policy of retaliating against whistleblowers, as evidenced by the coordinated actions of Defendants Burman, Celia, Todd, and McCreight, approved by final policymaker Burman."[124]

A municipality may be held liable under federal civil rights law only when its official policy or customs caused the alleged constitutional violation.[125] Son Lynch must "specify exactly" the underlying custom or policy.[126] He must "point to an official proclamation, policy, or edict by a decisionmaker possessing the final authority to establish municipal policy on the relevant subject."[127] A municipal policy under section 1983 is a "statement, ordinance, regulation, or decision officially adopted and promulgated by" the Township's officers.[128] A custom enacted by the Township may also lead to liability if it is "so widespread as to have the force of law."[129] "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy."[130] "Without an underlying constitutional violation, there can be no *Monell* claim."[131]

Son Lynch does not plead a standalone constitutional violation under federal civil rights law. We dismiss his municipal liability claim without prejudice to timely amend.

### G.   We decline to exercise supplemental jurisdiction over the state law claims.

Father and Son Lynch also plead trespass, malicious prosecution, defamation, and intentional emotional distress state law claims over which we may exercise our supplemental jurisdiction.[132] We can hear state claims filed within the statute of limitations where we have original jurisdiction over federal claims arising out of a common nucleus of operative fact.[133] The

federal and state claims must arise from the same case or controversy.[134] We may decline to exercise supplemental jurisdiction over claims if we have dismissed all claims over which we have original jurisdiction.[135]

We decline to exercise supplemental jurisdiction over the Lynches' remaining state claims absent a federal question. We dismiss the Lynches' state law claims as we decline to exercise supplemental jurisdiction over them.

## III.    Conclusion

Son Lynch claims his local police and township officials retaliated against him and his father by citing the father's property for code violations shortly after Son Lynch complained about police protection in his neighborhood and the police chief's salary on May 12, 2023. The Lynches defeated these charges at a full hearing. Father and Son Lynch waited until July 2, 2025 to sue the police, township officials, and unnamed mental health professionals for violating a variety of constitutional rights and under Pennsylvania law. The state actors moved to dismiss. Father and Son Lynch chose to not timely oppose the requested relief. We dismiss the Complaint but with different steps moving forward.

We dismiss with prejudice (i.e. no leave to amend) the time-barred claims as well as all official capacity claims against Chief Viola, Lieutenant Todd, Sergeant McCreight, Code Director Celia, and Township Manager Burman; the unreasonable search and seizure claims under the Fourth Amendment; the Fourteenth Amendment due process claims; and all  First Amendment retaliation claims based on alleged retaliatory acts before July 2, 2023.

We grant the Lynches leave to file an amended Complaint by November 21, 2025 consistent with Federal Rules of Civil Procedure 8 and 11 to plead a timely First Amendment retaliation claim arising from specific conduct attributable a state actor in his individual capacity

on or after July 2, 2023 if they can show a temporal connection between the alleged retaliation and

Son Lynch's allegedly protected conduct, a civil rights conspiracy claim under the First

Amendment, a municipal liability claim based on the retaliation claim, and state law claims not

otherwise barred by the statute of limitations.

---

[1] ECF 1 at 4–5, 28.

[2] *Id.* at 4, 7. We refer to Joseph B. Lynch as "Father Lynch" and Joseph J. Lynch as "Son Lynch" for ease of reference.

The Lynches timely and separately sued Haverford Township officials at No. 25-2382 relating to conduct immediately following the May 12, 2023 encounter as the police department. We dismiss this companion case today as well with leave to amend to bring cognizable claims by November 21, 2025.  We will then consider consolidating the remaining timely-pleaded claims into one lawsuit given the substantial similarity in the facts alleged by the Lynches against many of the same parties in both cases. For example, Son Lynch judicially admits in No. 25-2382 he complained to Haverford Township police on May 12, 2023 and a detective physically removed him from the police station. Those allegations are not pleaded in this case so we do not address them here. But we take judicial notice of these earlier facts to offer context for the May 12, 2023 events.  They pleaded the same conduct as to the Delaware County District Attorney in both cases but just separate out the different retaliations.

[3] *Id.* at 6–8.

[4] *Id.* at 8–9.

[5] *Id.* at 9.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 10–11.

[9] *Id.*

[10] *Id.* at 11.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 11–12.

[15] *Id.* at 12.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 10.

[20] *Id.* at 12.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 12–13.

[25] *Id.* at 13.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 14.

[31] *Id.*

[32] *Id.* at 14–15.

[33] *Id.* at 15.

[34] *Id.*

[35] *Id.* at 16.

[36] *Id.*

[37] *Id.*

---

[38] *Id.*

[39] *Id.* at 17.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 18.

[44] *Id.*

[45] *Id.* at 19.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 20.

[50] *Id.*

[51] *Id.* at 25–26.

[52] *Id.* at 27.

[53] *Id.* at 3–4. Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. To state a civil rights claim, Father and Son Lynch must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[54] ECF 7. *See, e.g., Love v. Does*, No. 17-1036, 2020 WL 5760447, at *14 (D.N.J. Sept. 28, 2020), *aff'd sub nom. Love v. Does 1-9*, No. 17-01036, 2021 WL 2134940 (D.N.J. May 26, 2021) ("Fictitious John Doe Defendants cannot be served without a name, or sufficiently identifying information, and address. . .").

[55] ECF 1 at 6–17, 32–33.

[56] *Id.* at 6–15, 33.

[57] *Id.* at 9–17, 33.

[58] *Id.* at 34.

[59] *Id.*

[60] *Id.* at 34–35.

[61] *Id.* at 32.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] ECF 10. Haverford Township, Police Chief John Viola, Lieutenant Lawrence Todd, Sergeant Robert McCreight, Code Director Joseph Celia, and Township Manager David Burman move to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[66] ECF 10 at 17–18.

[67] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)) (cleaned up).

[68] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[69] *Id.* (quoting *Mala*, 704 F.3d at 245).

[70] *Ewideh v. Keystone Advanced Remodeling, LLC*, No. 23-3032, 2024 WL 5668922, at *1 n.1 (E.D. Pa. Jan. 25, 2024) (quoting *King v. Luppold*, No. 18-3420, 2023 WL 4671346, at *2 (E.D. Pa. July 20, 2023)); *see also Fleming v. United States VA Med. Ctrs.*, 348 Fed. App'x. 737, 738 (3d. Cir. 2009) (affirming the district court's grant of a defendant's motion to dismiss under Rule 7.1(c) as "within its authority" when the plaintiff failed to respond for approximately four weeks); *Abdulhay v. Abdulhayoglu*, No. 22-2066, 2022 WL 6768194, at *3 n.3 (E.D. Pa. Oct. 11, 2022) ("It is within a district court's discretion to grant a motion to dismiss as unopposed pursuant to Local Civil Rule 7.1(c)").

[71] *See* ECF 10.

[72] *Id.* at 10.

[73] *See Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n. 55 (1978)).

[74] *See Bush v. Pennsylvania*, No. 23-2216, 2023 WL 5339612, at * 2 (E.D. Pa. Aug. 17, 2023) (citing *Bonenburger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)); *Draper v. Darby Twp. Police Dep't*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011) (citing *Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (noting the police department is not a "person" under section 1983 "because it lacks an identity separate from the municipality of which it is a part.")).

[75] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[76] *Id*.

[77] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

[78] ECF 1 at 33.

[79] ECF 10 at 16.

[80] *Id*.

[81] *Lloyd v. Ocean Twp. Couns.*, 857 F. App'x 61, 64 (3d Cir. 2021) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)) ("A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims."); *see also* 42 PA. CONS. STAT. ANN. § 5524.

---

[82] *Millan v. Municipality of Harrison*, No. 24-2882, 2025 WL 2375263, at *1 (3d Cir. Aug. 15, 2025) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).

[83] ECF 1 at 13.

[84] U.S. Const. amend. IV.

[85] *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967).

[86] *Stone v. Martin*, 720 F. App'x 132, 134 (3d Cir. 2017) (internal quotations omitted).

[87] *Alburg v. Jones*, 784 F. Supp. 3d 775, 787 (E.D. Pa. 2025) (quoting *Stone*, 720 F. App'x at 134–35).

[88] *Haberle v. Troxell*, 885 F.3d 170, 176 (3d Cir. 2018) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3d Cir. 2003)).

[89] *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 555 (1980)); *see also id.* ("There must be, for instance, 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, . . . the use of language or tone of voice indicating that compliance with the officer's request might be compelled,' or some other communication that would convey to a reasonable person that compliance was not optional.") (quoting *Mendenhall*, 446 U.S. at 554). Telling Father Lynch to "move the materials" during a brief conversation at the door does not amount to a show of authority or coercion causing a reasonable person to believe he could not end the encounter.

[90] *Stone,* 720 F. App'x at 135.

[91] ECF 1 at 13–14.

[92] *Edwards v. Banpfield*, No. 22-2062, 2023 WL 2815963, at *3 (E.D. Pa. Apr. 6, 2023), *appeal dismissed*, No. 23-3137, 2024 WL 2814503 (3d Cir. Apr. 5, 2024) (quoting *Stone* 720 F. App'x at 135).

[93] *Id.* (quoting *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)).

[94] *Grady v. North Carolina*, 575 U.S. 306, 310 (2015).

[95] *See Edwards,* 2023 WL 2815963, at *3 (citing *Florida v. Jardines*, 569 U.S, 1, 6–7 (2013)).

[96] The Lynches underscore this point. Code Director Celia told Father Lynch he "didn't have a problem with [the] project" and "Dave made [him] do it," referring to posting the violation. ECF 1 at 15. Code Director Celia then "posted the violation . . . before leaving." *Id.*

[97] *See Jones*, 565 U.S. at 408 n.5; *Stone v. Martin,* No. 15-1632, 2016 WL 7404607, at *5 (M.D. Pa. Dec. 22, 2016), *aff'd*, 720 F. App'x 132 (3d Cir. 2017).

[98] ECF 1 at 33.

[99] ECF 10 at 11.

[100] *Id.* at 11–12.

[101] *See supra* nn.82–83.

[102] *AstraZeneca Pharm. LP v. Sec'y United States Dep't of Health and Human Servs.*, 137 F.4th 116, 125 (3d Cir. 2025) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)).

[103] *eXp Realty, LLC v. Borough of Glenolden*, No. 23-4287, 2024 WL 1806429, at *11 (E.D. Pa. Apr. 25, 2024) (quoting *Abbot v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

[104] ECF 1 at 14–18, 31.

[105] *Id.* at 32–33.

[106] *Id.*

[107] *Id.* at 4.

[108] *Id.* at 4, 6, 9.

[109] *Id.* at 7–8, 15.

[110] *Id.* at 13, 15.

[111] *Id.* at 15–16.

[112] *Id.* at 16–17. Father and Son Lynch also refer to an August 15, 2023 hearing. *See id.* at 17, 28. We assume this refers to the same proceeding held on August 23, 2023.

[113] ECF 10 at 17.

[114] *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (cleaned up) (footnote omitted).

[115] *Millan*, 2025 WL 2375263, at *1 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128–29 (3d Cir. 2006)).

[116] ECF 1 at 36.

[117] *See supra* nn.82–83.

[118] Only Son Lynch is identified as the alleged target of the civil rights conspiracy. *See* ECF 1 at 34. To the extent Father Lynch seeks to assert a conspiracy claim under § 1985(3), we dismiss it with prejudice because the Complaint alleges no conspiracy directed at him.

[119] *Id.* The Lynches name "Vernacchio" as another participant in the alleged conspiracy. *See id.* Vernacchio is not named as a defendant in the case caption so we disregard this as an error.

[120] ECF 10 at 12–13.

[121] *Davis v. Wigen*, 82 F.4th 204, 214 (3d Cir. 2023) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)).

[122] *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").

[123] The alleged unconstitutional retaliatory conduct is asserted only against Son Lynch as a whistleblower. To the extent Father Lynch seeks to assert a municipal liability claim, we dismiss it with prejudice because the Complaint does not allege a Township policy or custom directed at him.

[124] ECF 1 at 34.

[125] *Monell*, 436 U.S. at 694–95.

[126] *Bush*, 2023 WL 5339612, at *2 (citing *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[127] *Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir. 2019).

[128] *Monell*, 436 U.S. at 690.

[129] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

[130] *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

[131] *City of Phila. v. Hempstead Props., LLC*, No. 23-2434, 2024 WL 1620792, at *2 (E.D. Pa. Apr. 15, 2024) (citing *Knellinger v. York Street Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014)).

[132] ECF 1 at 34-35; 28 U.S.C. § 1367(a).

[133] *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 307–08 (3d Cir. 2003).

[134] *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 303 (3d Cir. 1998).

[135] 28 U.S.C. § 1367(c).